UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MILLER BECKHAM, III, | : | Case No. 1:05-cv-554 |
| | : | |
| Plaintiff, | : | Dlott, J. |
| | : | Black, M.J. |
| vs. | : | |
| | : | |
| R.W JUCKNIESS COMPANIES, INC. | : | |
| A/K/A RWJ COMPANIES, INC., | : | |
| | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 35) BE GRANTED AND THIS CASE CLOSED.**

Plaintiff, an African-American, initiated this action on August 23, 2005 by filing a *pro se* complaint against defendant R.W. Juckniess Companies, Inc. ("RWJ"), his former employer, alleging racial discrimination in violation of 42 U.S.C. § 1981.

Now before the Court is RWJ's motion for summary judgment (doc. 35) and the parties' responsive memoranda (docs. 41, 42).

**I. BACKGROUND AND FACTS**

1. RWJ is a privately-owned Indiana company that operated convenient stores, car washes, and Shell gasoline stations in Indiana and Ohio. (Doc. 35, Ex.1, Declaration of Robert W. Juckniess ("Juckniess Decl.") at ¶ 2.) RWJ had approximately 197 employees at the time of plaintiff's discharge, and its principal office was located in

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

Indianapolis, Indiana. (Juckniess Decl. at ¶ 3.)

2. RWJ operated a Shell gas station in North College Hill, Ohio, located in the Greater Cincinnati area. (Juckniess Decl. at ¶ 4.)

3. On August 15, 2004, plaintiff began his employment with RWJ as a cashier at this station. (Juckniess Decl. at ¶ 5.)

4. Plaintiff reported to Josh Pierman, the assistant manager. (Juckniess Decl. at ¶ 6.) As the assistant manager, Mr. Pierman was responsible for depositing cash receipts, which were stored in a safe located in a locked office at the back of the gas station. (Juckniess Decl. at ¶ 6.)

5. On or about January 23, 2005, Mr. Pierman was going to deposit three days worth of cash receipts totaling $13,797.45, but discovered that the cash and the security videotape had been stolen. (Juckniess Decl. at ¶ 7.)

6. Mr. Pierman filed a police report with the North College Hill Police Department. (Juckniess Decl. at ¶ 7; Doc. 35, Ex. 2, Declaration of Detective Dan Fritz ("Fritz Decl.") at ¶ 3.)

7. Mr. Pierman also reported the theft to Nick Newman, who was a manager responsible for troubleshooting and solving problems at certain RWJ Shell gas stations. (Declaration of Nicholas Newman ("Newman Decl.") at ¶ 3.) Mr. Pierman informed Mr. Newman that Terrell Marshall, a McDonald's employee who worked in the same building as the Shell gas station, was involved in the theft and that Mr. Marshall had implicated Mr. Beckham in the crime. (Newman Decl. at ¶ 4.)

-2-

8. Mr. Newman asked Mr. Pierman how they were able to gain access to the secured area, and Mr. Pierman replied that he inadvertently left his key to the door in the front of the gas station. (Newman Decl. at ¶ 4.) Mr. Newman then spoke to Mr. Marshall. (Newman Decl. at ¶ 5.) Mr. Marshall confessed to Mr. Newman that he and plaintiff took the key to the locked room, drove to the locksmith, had a copy of the key made, drove back to the gas station, and stole the cash. (Newman Decl. at ¶ 5.)

10. At that point, Mr. Newman contacted Detective Dan Fritz of the North College Hill Police Department and conveyed Mr. Marshall's confession. (Newman Decl. at ¶ 6; Fritz Decl. at ¶ 5.)

11. Detective Fritz began a full investigation and interviewed Mr. Marshall. (Fritz Decl. at ¶ 6.) On or about January 26, 2005, Mr. Marshall informed the detective that plaintiff was directly involved in the theft, including stealing the keys to gain access to the secured area. (Fritz Decl. at ¶ 6.)

12. Additionally, on or about January 28, 2005, Detective Fritz learned from Mr. Pierman that a locksmith employee from Brothers Lock and Key identified plaintiff as one of the persons who had a copy of a key made on the date in question. (Fritz Decl. at ¶ 7.)

13. Detective Fritz then advised Mr. Newman and Dave Ruffin, who was RWJ's District Area Manager, that Mr. Marshall had implicated plaintiff in the crime and that a locksmith employee identified plaintiff as having duplicated the key. (Fritz Decl. at ¶ 8; Newman Decl. at ¶ 7.)

14. Mr. Newman and Mr. Ruffin believed that plaintiff, at a minimum, facilitated the robbery by providing Mr. Marshall access to the key and having it duplicated. Consequently, Mr. Newman advised plaintiff on or about January 31, 2005 that his employment was terminated for removing and duplicating a key to a secured area. (Newman Decl. at ¶ 9.) Although Mr. Newman and Mr. Ruffin suspected plaintiff of being more involved, they felt that the information about plaintiff's involvement through removing and copying the key was more easily provable because of the corroborating evidence from the locksmith employee that he had a duplicate of the key made. (Newman Decl. at ¶ 8.)[2]

Thereafter, on August 23, 2006, plaintiff filed the instant action against RWJ alleging race discrimination. On December 14, 2006, defendant filed the instant motion for summary judgement asserting that it is entitled to judgement as a matter of law. The undersigned agrees, and for the reasons that follow, recommends that defendant's motion be found to be well-taken.

---

[2] Independent of RWJ's decision to terminate plaintiff, Detective Fritz interviewed Sue Zorns, an employee at Brothers Lock and Key, and showed her photographs of various suspects in the crime. (Fritz Decl. at ¶ 9.) Ms. Zorns immediately identified plaintiff from the photographs as the one who had had a copy of the key made at the store. (Fritz Decl. at ¶ 9.) Detective Fritz thereafter relayed this information to Mr. Ruffin and Mr. Newman at RWJ. (Fritz Decl. at ¶ 9.)

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which might affect the outcome of the action. *Celotex,* 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

## III. DISCUSSION

To prevail on his claim of racial discrimination, plaintiff must first demonstrate a *prima facie* case by submitting evidence that: (1) he is part of a protected class; (2) he was qualified for the job that he held during the time in question; (3) he suffered an adverse employment action; and (4) he was treated differently than similarly-situated individuals who were not members of his protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-04 (1973); *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1166 (6th Cir. 1996).[3]

If a plaintiff makes a *prima facie* showing, the burden shifts to the defendant to

---

[3] The same McDonnell Douglas analysis applied to claims arising under Title VII are applied to claims under 42 U.S.C. § 1981. *Giles v. University of Toledo,* 478 F.Supp.2d 942, 960 (N.D.Ohio 2007).

articulate a legitimate, nondiscriminatory reason for the action taken. *See Burdine,* 450 U.S. at 253. If defendant is able to meet this burden, plaintiff is then required to prove by a preponderance of the evidence that the legitimate reasons offered by defendant were a pretext for discrimination. *Id.* A plaintiff can demonstrate pretext by: (1) offering proof that the given reason did not exist in fact; (2) establishing that, while the given reason is factual, it was not the true reason for the allegedly discriminatory action; or (3) showing that the given reason was not sufficient for the action. *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994).

The ultimate burden of persuading the trier of fact that defendant intentionally discriminated against plaintiff remains at all times with plaintiff. *See Burdine,* 450 U.S. at 253.

Here, defendant asserts that plaintiff cannot establish a *prima facie* case of race discrimination because he cannot show that he was treated less favorably than similarly-situated employees who were not members of the protected class.

Plaintiff, however, argues that Chad Asher, a Caucasian and similarly-situated employee, was treated more favorably. Plaintiff maintains that only African-American employees were questioned regarding the theft. In support of this contention, plaintiff has submitted the affidavits of former RWJ employees, Fatima Thomas and Cedric Pitts. (Doc. 41, Ex. 3, Declarations of Fatima Thomas and Cedric Pitts). Thomas and Pitts, both African-American, were employed at the same Shell gas station as plaintiff. In their declarations, that assert that they were questioned regarding the theft, and Chad Asher

-6-

was not questioned regarding the theft.

However, based on the evidence of record, it appears that Asher was not similarly-situated "in all relevant aspects." *See Wright v.. Murray Guard*, 455 F.3d 702, 710 (6th Cir.2006) ( citing *Ercegovich v. Goodyear Tire & Rubber Company,* 154 F.3d 344, 352 (6th Cir.1998)) (To establish that a fellow employee is comparable, "the plaintiff [must] demonstrate that he or she is similarly situated to the [claimed comparator] in all relevant respects").

The Sixth Circuit has held that to be found similarly situated, the plaintiff and his proposed comparator must have engaged in acts of "comparable seriousness." *Id*.  To make this assessment, the court may look to certain factors, such as whether the individuals "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer s treatment of them for it." *Id*. (*citing Ercegovich*, 154 F.3d at 352).

As noted above, RWJ learned that McDonald's employee Terrell Marshall, who worked in the same building as the Shell gas station, implicated plaintiff in the theft. No such allegations involved Mr. Asher.

In any event, even assuming plaintiff can establish a *prima facie* case of race discrimination, defendant has proffered a legitimate non-discriminatory reason for plaintiff's termination, namely his removing and duplicating a key to the safe, and the alleged theft of approximately $13,000.

The burden now shifts to plaintiff to establish by a preponderance of the evidence that the legitimate reasons offered by defendant were a pretext for discrimination. However, plaintiff has failed to submit sufficient evidence and /or argument to establish pretext.

The Sixth Circuit has adopted an "honest belief" rule with regard to an employer's proffered reason for discharging an employee. *Kurincic v. Stein Inc.*, 30 Fed.Appx. 420, \*425, 2002 WL 231417, \*\*3 (6th Cir. 2002) (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir.1998)). Under this rule, so long as an employer honestly believed in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be mistaken or incorrect. *Smith*, 155 F.3d at 806; *See also McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir.1992) ("[T]he issue of pretext does not address the correctness or desirability of reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers."). An employer has an honest belief in its reason for discharging an employee when the employer reasonably relies "on the particularized facts that were before it at the time the decision was made." *Smith*, 155 F.3d at 807.

Here, plaintiff has not shown RWJ's reason for his discharge was pretext for race discrimination. It is undisputed that Mr. Newman learned about plaintiff's involvement in the robbery from Mr. Marshall, who worked at a McDonald's located in the same building as the RWJ Shell gas station. Mr. Newman thought that Mr. Marshall's

-8-

allegation was sufficiently serious and meritorious that he advised Detective Fritz of the College Hill Police Department of the statement for further investigation.  When Detective Fritz interviewed Mr. Marshall, he again accused plaintiff of being directly involved in the theft, which included the removal and duplication of the key to the locked room.

Detective Fritz relayed his findings from the interview to Mr. Newman and Mr. Ruffin, and also informed them that he had learned that an employee at the locksmith identified plaintiff as one of the two individuals who had a copy of the key made.  Based on this information, Mr. Newman and Mr. Ruffin had every reason to believe that, at a minimum, plaintiff removed and duplicated a key to a secured area without authorization.  Based on these particularized facts, Mr. Newman advised plaintiff that his employment was terminated.  Thus, the evidence of record clearly establishes that RWJ honestly believed its proffered reason for terminating plaintiff, his removing and duplicating a key to the safe, and the alleged theft of approximately $13,000.

Accordingly, the undersigned finds that RWJ is entitled to judgment as a matter of law.  It is therefore **RECOMMENDED** that defendant RWJ's motion for summary judgment should be **GRANTED**, and this case should be **CLOSED**.

Date:   August 24, 2007               s/Timothy S. Black
                                      Timothy S. Black
                                      United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MILLER BECKHAM, III, | : | Case No. 1:05-cv-554 |
| | : | |
| Plaintiff, | : | Dlott, J. |
| | : | Black, M.J. |
| vs. | : | |
| | : | |
| R.W JUCKNIESS COMPANIES, INC. | : | |
| A/K/A RWJ COMPANIES, INC., | : | |
| | : | |
| Defendant. | : | |

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation within **TEN DAYS** after being served with a copy thereof.  That period may be extended by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the Report and Recommendation objected to and shall be accompanied by a memorandum of law in support of the objections.  A party may respond to an opponent's objections within **TEN DAYS** after being served with a copy those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).